# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

STEVEN NYHART                    *
AND JENNIFER NYHART
                                 *
    Plaintiffs
                                 *
  v.
                                 *    Civil No. 15-cv-02241-PX
PNC BANK, N.A.
                                 *
    Defendant
                                 *

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

## MEMORANDUM OF LAW IN SUPPORT
## OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Defendant, PNC Bank, N.A. ("PNC"), by its attorneys and pursuant to Rule 56 of the Federal Rules of Civil Procedure, submits this Memorandum of Law in support of its motion for summary judgment and states as follows:

## INTRODUCTION

This case stems from the failure of Plaintiff, Steven Nyhart ("Mr. Nyhart"), to make the required payments on his mortgage loan.  The undisputed facts show that Mr. Nyhart had a long history of untimely payments on the loan, dating back to 2005.  By January, 2014, Mr. Nyhart was two payments behind.  At that time, PNC offered Mr. Nyhart a repayment plan, which would have allowed him to bring

the loan current by making increased payments over a period of five months. However, Mr. Nyhart failed to make the payments required by the repayment plan.

As a result, PNC declared the loan in default and, ultimately, initiated a foreclosure action.  In response, Mr. Nyhart and his wife, Jennifer Nyhart, filed this lawsuit against PNC, claiming that PNC caused them $500,000 in emotional distress damages by "wrongfully" rejecting Mr. Nyhart's mortgage payments and initiating a foreclosure.  As demonstrated below, Plaintiffs' claims fail as a matter of law because the undisputed facts show that PNC was within its rights under the plain terms of the loan documents to reject Mr. Nyhart's payments because the payments were not sufficient to bring the loan current.  Accordingly, PNC is entitled to judgment as a matter of law on all of the claims in Plaintiffs' complaint.

## STATEMENT OF UNDISPUTED FACTS

1.      On or about January 26, 2005, Mr. Nyhart received a $245,000 mortgage loan from National City Mortgage (the "Loan").  <u>See</u> Excerpts from Transcript of the Deposition of Steven Nyhart, attached hereto as <u>Exhibit 1</u>, pp. 26-28.

2.      In exchange for the Loan, Mr. Nyhart signed a promissory note dated January 26, 2005, promising to re-pay the Loan, plus interest.  <u>See</u> <u>Exhibit 1</u>, pp. 35-36.  A true and correct copy of the Note is attached hereto as <u>Exhibit 2</u>.  <u>Id</u>., Declaration of Jason Holstein, attached hereto as <u>Exhibit 3</u>, ¶ 13.

3.      Mr. Nyhart also signed a deed of trust dated January 26, 2005 (the "Deed of Trust"), granting National City Mortgage an interest in the real property located at 500 Beaumont Road, Silver Spring, Maryland 20904 (the "Property"), where Mr. Nyhart resides with his family.  Exhibit 1, pp. 9; 26-27.

4.      A true and correct copy of the Deed of Trust is attached hereto as Exhibit 4.  Id.; Exhibit 3, ¶ 14.

5.      The Deed of Trust was also signed by Plaintiff Jennifer Nyhart ("Mrs. Nyhart"), who is a co-owner of the Property.  Exhibit 1, p. 27; Exhibit 3, ¶ 12; Exhibit 4.  However, Mrs. Nyhart is not a borrower on the Loan and did not sign the Note.  Exhibit 1, p. 36; Exhibit 2; Exhibit 3, ¶ 12.

6.      The Deed of Trust was recorded in the land records of Montgomery County, Maryland, at liber 29219, folio 001 on or about February 8, 2005.  Exhibit 4.

7.      PNC became the servicer of the Loan as a result of PNC's acquisition of National City Mortgage.  Exhibit 3, ¶ 9.

8.      Attached hereto as Exhibit 5 is a true and correct copy of a payment history for the Loan (the "Loan Transaction History").  Id., ¶ 15.

9.     From 2005 through 2014, Mr. Nyhart made late payments on the Loan numerous times.  Id., ¶ 17.

10.     Attached hereto as Exhibit 6 are true and correct copies of some of the letters PNC sent to Mr. Nyhart advising him that his mortgage payment was past due.  Id., ¶ 18; Exhibit 1, pp. 83-92.

11.     In January, 2014, Mr. Nyhart was two payments behind on the Loan and the total past due amount was $3,521.56.  Exhibit 3, ¶ 21.

12.     On or about January 15, 2014, PNC approved Mr. Nyhart for a repayment plan so that he could attempt to bring his loan current (the "Repayment Plan").  Exhibit 1, pp. 106-08; Exhibit 3, ¶ 19.

13.     Attached as Exhibit 7 is a true and correct copy of the letter PNC sent to Mr. Nyhart advising him that he had been approved for the Repayment Plan.  Exhibit 1, pp. 106-08; Exhibit 3, ¶ 20.

14.     Under the Repayment Plan, Mr. Nyhart was required to pay $2,340 on or before January 16, 2014, followed by three payments of $2,496.36 each on or before February 15, 2014, March 15, 2014 and April 15, 2014, and a final payment of $2,496.38 on or before May 15, 2014.  Exhibit 1, pp. 106-08; Exhibit 3, ¶ 22; Exhibit 7, p. 2.

15.     Mr. Nyhart failed to make all of the payments required by the Repayment Plan.  Exhibit 3, ¶ 23; Exhibit 5, p. PNC 1497.

16.     Mr. Nyhart paid $2,345 on January 10, 2014, and $2,497 on or about February 13, 2014.  Exhibit 3, ¶ 24; Exhibit 5, p. PNC 1497.

17.     Mr. Nyhart's next payment of $2,497 was paid on or about March 19, 2014, three days late.  Exhibit 3, ¶ 25; Exhibit 5, p. PNC 1497.

18.     Mr. Nyhart failed to pay anything toward the $2,496.36 payment that was due April 15, 2014.  Exhibit 3, ¶ 26; Exhibit 5, p. PNC 1497.

19.     On May 16, 2014, Mr. Nyhart paid only $1,760.  Exhibit 3, ¶ 27; Exhibit 5, p. PNC 1497.

20.     Because Mr. Nyhart failed to comply with the terms of the Repayment Plan, his Loan was in default.  Exhibit 3, ¶ 28.

21.     Accordingly, pursuant to its rights under the Deed of Trust, PNC returned the May 16, 2014 $1,760 payment to him because it was insufficient to bring the loan current.  Exhibit 3, ¶ 29; Exhibit 4, § 1; Exhibit 5, p. PNC 1497; Exhibit 8.

22.    Mr. Nyhart made a payment of $1,773 on or about June 13, 2014.  This payment was also returned to Mr. Nyhart because it was insufficient to bring the loan current.  Exhibit 3, ¶ 30; Exhibit 5, p. PNC 1497; Exhibit 9.

23.    Since May, 2014, Mr. Nyhart has failed to pay sufficient funds to bring his Loan current.  Exhibit 3, ¶ 31; Exhibit 5, p. PNC 1497.

24.    As a result, PNC has returned all payments Mr. Nyhart has submitted to PNC since that time.  Exhibit 3, ¶ 32.

## LEGAL ARGUMENT

### I.    THE STANDARD FOR SUMMARY JUDGMENT.

Summary judgment must be granted where there is no dispute as to material fact and the moving party is entitled to judgment as a matter of law.  Runnebaum v. Nationsbank of Maryland, 123 F.3d 156, 163 (4th Cir. 1997).  Rule 56(c) of the Federal Rules of Civil Procedure mandates the entry of summary judgment where, after adequate time for discovery, the non-moving party fails to come forth with proof sufficient to establish an essential element of its claim or defense.  Cray Communications v. Novatel, 33 F.3d 390, 393 (4th Cir. 1994), cert. denied, 513 U.S. 1191 (1995).

In order to survive a properly-supported motion for summary judgment, the non-moving party must present evidence from which a reasonable fact-finder could

return a verdict in its favor.  <u>Monsanto Co. v. Spray-Rite Service Corp.</u>, 465 U.S. 752, 768 (1984).  The mere existence of some disputed fact does not require denial of the motion.  <u>Thompson Everett, Inc. v. National Cable</u>, 57 F.3d 1317, 1322 (4th Cir. 1995).  Rather, the disputed facts must be material to an issue necessary for resolution of the case and the quality and quantity of the evidence offered to create a question of fact must be adequate to support a verdict.  <u>Id</u>.

## II.  PNC IS ENTITLED TO SUMMARY JUDGMENT ON ALL OF PLAINTIFFS' CLAIMS.

Plaintiffs' Complaint contains four counts against PNC.  Count I seeks a declaratory judgment that PNC improperly rejected Mr. Nyhart's payments.  Count II seeks damages for breach of contract. Count III seeks damages for "deceptive trade practices" under the Maryland Consumer Protection Act, and Count IV seeks damages for alleged violations of the Maryland Consumer Debt Collection Act. As shown below, all four of these claims fail as a matter of law because, <u>inter alia</u>, PNC was entirely within its rights to reject Mr. Nyhart's payments because the payments were insufficient to bring the Loan current.  As such, PNC is entitled to summary judgment on all four claims.

### A.    Plaintiffs Are Not Entitled To Declaratory Relief.

Count I of Plaintiffs' Complaint seeks a declaration that PNC "breached its contract (i.e. the Note and DOT) with Plaintiffs by wrongfully rejecting Plaintiffs[']

monthly mortgage payments and commencing foreclosure proceedings." (Doc. 2, ¶ 31)  The undisputed facts show that Plaintiffs are not entitled to such relief.

Pursuant to the plain terms of the Deed of Trust and Note, Mr. Nyhart is obligated to make the monthly payments under the Note on the first day of each month.  <u>Exhibit 2</u>, § 3; <u>Exhibit 4</u>, § 1.  If Mr. Nyhart fails to make the full amount of each monthly payment by the due date, the Loan is in default.  <u>Exhibit 2</u>, § 6.

If Mr. Nyhart makes a payment that is insufficient to pay the full amount due, or to bring the Loan current, PNC has the option under §  1 of the Deed of Trust to either accept the payment or to return the payment to Mr. Nyhart:

> **1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.**  Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and later charges due under the Note.
>
> \*       \*       \*
>
> *Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current.*  Lender may accept any payment or partial payment if the payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future . . .

<u>Exhibit 4</u>, pp. 3-4 (emphasis added).

In the instant case, it is undisputed that Mr. Nyhart failed to make all the payments due under the Note.  In January, 2014, Mr. Nyhart was two monthly payments behind and had a past due balance of $3,521.56.  <u>Exhibit 3</u>, ¶ 21. Although PNC could have refused to accept further payments and proceeded with a foreclosure at that time, it instead offered Mr. Nyhart the Repayment Plan. <u>Exhibit 3</u>, ¶ 21-22; <u>Exhibit 7</u>.  The Repayment Plan gave Mr. Nyhart the opportunity to re-pay this past due balance over five months and bring the loan current, by paying $2,340 on or before January 16, 2014, followed by three payments of $2,496.36 each on or before February 15, 2014, March 15, 2014 and April 15, 2014, and a final payment of $2,496.38 on or before May 15, 2014. <u>Exhibit 3</u>, ¶¶ 21-22; <u>Exhibit 7</u>, p. 2.

PNC explicitly advised Mr. Nyhart that he would be required to make all five payments in full and on time:

> It's important for you to know that there is no grace period during the term of your Repayment Plan. *You must make each payment in full on or before the monthly due date*.

<u>Exhibit 7</u>, p. 1 (emphasis added).

Mr. Nyhart made the first two payments under the Repayment plan on time. <u>Exhibit 3</u>, ¶ 24; <u>Exhibit 5</u>, p. PNC 1497.  However, the third payment, due March 15, 2014, was late.  <u>Exhibit 3</u>, ¶ 25; <u>Exhibit 5</u>, p. PNC 1497.  Mr. Nyhart failed to

make the fourth payment due on April 15, 2014 and then made a partial payment of $1,760 on May 16, 2014.  Exhibit 3, ¶¶ 26-27; Exhibit 5, p. PNC 1497.

When confronted with these facts during his deposition, Mr. Nyhart admitted that he failed to make the May 16 payment required under the Repayment Plan:

> Q:  All right. So the amount that you paid on May 16, 2014, was $1,760, right?
>
> A:  Correct.
>
> Q:  But under the repayment plan, which is reflected in Exhibit 30, the payment that was due May 15, 2014, was actually $2,496, right?
>
> A:  It might have been a mistake, yes.  Okay.
>
> \*      \*      \*
>
> Q:  So instead of paying that amount, you paid the $1,760, correct?
>
> A: Certainly, yeah, yeah. It looks like that's what happened.

Exhibit 1, pp. 109-10.

Based on Mr. Nyhart's admitted failure to make the payments sufficient to bring the Loan current, PNC rejected the partial payment of $1,760 he made on May 16, 2014.  Exhibit 3, ¶ 29; Exhibit 8.  PNC also rejected the partial payment of $1,773 that Mr. Nyhart made on or about June 13, 2014, as well as subsequent

partial payments, because they were insufficient to bring the loan current.  Exhibit 3, ¶¶ 30-32; Exhibit 9.

Accordingly, PNC did not breach the terms of the Note or the Deed of Trust by rejecting Mr. Nyhart's payments and his claim for a declaratory judgment fails as a matter of law.[1]  Exhibit 4, pp. 3-4.

### B.    Plaintiffs' Claim For Breach Of Contract Fails As A Matter Of Law.

Count II of the Complaint seeks to recover damages for breach of contract. To maintain a cause of action for breach of contract under Maryland law, a plaintiff must prove (1) a contractual obligation owed by the defendant to the plaintiff; and (2) a breach of that obligation by the defendant.  Continental Masonry v. Verdel Construction, 279 Md. 476, 480, 369 A.2d 566, 569 (1977).  In the instant case, Plaintiff has no evidence showing that PNC breached its agreement with Plaintiffs.  To the contrary, the undisputed facts show that it was Mr. Nyhart  who breached his obligations under the Note and Deed of Trust by failing to make the required payments, and that PNC was therefore entitled to

---

[1]      Plaintiffs apparently base their claim that PNC wrongfully rejected Mr. Nyhart's May and June, 2014 payments on a letter that PNC's customer service department sent to Plaintiffs' prior counsel.  This letter, which is attached as Exhibit B to Plaintiffs' Complaint, incorrectly stated that the payments should not have been rejected.  In fact, the payments were properly rejected because they were insufficient to bring the Loan current.  Exhibit 3, ¶¶ 35-36.

reject Mr. Nyhart's payments that were insufficient to bring the loan current. Therefore, Plaintiffs' claim for breach of contract fails as a matter of law.[2]

**1.    PNC Was Entitled To Reject Mr. Nyhart's Partial Payments, Declare The Loan In Default And Initiate A Foreclosure.**

Plaintiffs' contract claim is premised on an incorrect factual predicate:  that PNC wrongfully rejected Mr. Nyhart's payments.[3]  As shown above, however, this factual premise is simply wrong.   The truth is, Mr. Nyhart's payments were insufficient to bring the loan current.  Exhibit 3; ¶¶ 29-32.  Therefore, PNC was entirely within its rights to reject those partial payments and declare Plaintiffs in default.  Exhibit 4, ¶  3-4.  In addition, the Deed of Trust gave PNC the right, upon Plaintiffs' default, to institute a foreclosure action.   Exhibit 4, ¶ 22.   Therefore, Plaintiffs' breach of contract claim based on PNC's purported wrongful rejection of payments, declaration of default and initiation of a foreclosure fails as a matter of law.

---

[2]    Furthermore, Mrs. Nyhart lacks standing to bring a breach of contract claim because she is not a borrower on the Loan and did not sign the Note.  Exhibit 2; Exhibit 3, ¶ 12.

[3]    Plaintiffs allege that PNC breached its agreement with Plaintiffs by "repeatedly wrongfully rejecting Plaintiffs' monthly mortgage payments of the correct amounts legally due under the Note."  (Doc. 2, ¶ 37)  Plaintiffs also allege that PNC committed breaches of contract by "wrongfully declaring Plaintiffs in default under the Note" and "wrongfully instituting [a] foreclosure against Plaintiffs."   (Doc. 2, ¶¶ 38; 40)

2.      **Plaintiffs' Contract Claim For Inaccurate Credit Reporting Is Preempted By The Federal Fair Credit Reporting Act.**

Plaintiffs' claim that PNC breached its contract with Plaintiffs by reporting inaccurate information about Plaintiffs' loan to credit reporting agencies (Doc. 2, ¶ 39) also fails as a matter of law.  It is well established that state law claims based on inaccurate credit reporting are preempted by the federal Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 et seq.   See, e.g., Ross v. FDIC, 625 F.3d 808, 813 (4th Cir. 2012) (holding that state law claims for alleged inaccurate credit reporting were preempted by the FCRA); see also Blackburn v. BAC Home Loans, 2012 U.S. Dist. LEXIS 130905 at *18-19 (M.D.Ga. Sept. 13, 2012) (dismissing state law claims based on allegedly inaccurate credit reporting due to FCRA preemption).

The FCRA provides remedies for consumers who believe that they have been damaged by inaccurate credit reporting.  See generally 15 U.S.C. § 1681s-2; ("The FCRA is a comprehensive statutory scheme designed to regulate the consumer reporting industry").  Accordingly, the FCRA explicitly preempts state law claims based on credit reporting activities:

> [n]o requirement or prohibition may be imposed under the laws of any State . . . with respect to any subject matter regulated under . . . section 1681s-2 of this title, relating to the responsibilities of persons who furnish information to consumer reporting agencies . . .

15 U.S.C. § 1681t(b)(1)(F).[4]

In the instant case, Plaintiffs allege that PNC committed a breach of contract by "falsely and wrongly reporting negatively to the credit bureaus." (Doc. 2, ¶ 39) This state law claim is based on PNC's purported reporting of inaccurate credit information, which is regulated under § 1681s-2 and is therefore "squarely preempted by the plain language of [§1681t(b)(1)(F)] of the FCRA." Ross, 625 F.3d at 813. Accordingly, PNC is entitled to judgment as a matter of law on that portion of Count II based on PNC's alleged inaccurate credit reporting.

### 3.     Plaintiffs Have No Evidence That Their Credit Has Been Damaged By PNC.

Even if Plaintiffs could recover for inaccurate credit reporting on their breach of contract claim -- which they cannot -- their claim would still fail because they have no proof that their credit has been damaged by PNC's rejection of Mr. Nyhart's partial payments in May and June of 2014. The fact is, Mr. Nyhart had poor credit long before PNC rejected the May and June 2014 payments. By that time, he had been habitually late on his mortgage payments since 2006. Exhibit 3, ¶¶ 17-18; Exhibit 5; Exhibit 6. Furthermore, Mr. Nyhart admitted in his deposition

---

[4]     Section 1681s-2 of the FCRA describes the duties and responsibilities of furnishers of credit information like PNC. These include the "[d]uty of furnishers of information to provide accurate information," and the responsibility, after receiving notice of a dispute, to correct any errors in reporting. 15 U.S.C. § 1681s-2(a)(1)-(2). Section 1681s-2 regulates precisely the type of activity upon which Plaintiffs base their claims in the instant case. (Doc. 2, ¶ 39)

that he was late on numerous other payments, including a car loan and cell phone account. Exhibit 1, pp. 128-32. He also had a judgment entered against him.. Id. Moreover, Mr. Nyhart admitted that he had never even looked at his credit report and had no idea what his credit reports showed about how PNC was reporting the Loan. Exhibit 1, pp. 18; 124-25. Plaintiffs have produced no evidence as to what PNC was reporting regarding the Loan, or that that they were denied credit as a result of PNC's credit reporting.[5] Without evidence that PNC's rejection of Mr. Nyhart's payments in May and June of 2014 negatively impacted their credit, Plaintiffs cannot recover damages from PNC for alleged inaccurate credit reporting. Wu v. Trans Union, 2006 U.S. Dist. LEXIS 96712 at *33-34 (D.Md. May 2, 2006), aff'd 219 Fed. Appx. 320 (4th Cir. 2007) (granting summary judgment on FCRA claim due to lack of evidence of actual damage to plaintiff's credit).

### 4. Plaintiffs' Cannot Recover Damages For Emotional Distress And "Loss of Consortium" For Breach Of Contract.

Finally, even if Plaintiffs did have a viable breach of contract claim, which they do not, their attempt to claim damages for emotional distress and loss of consortium under Count II fails as a matter of law. It is well-established that

---

[5] In fact, Mrs. Nyhart testified at her deposition that she is not seeking to recover for alleged damage to her credit because she never applied for any credit at the time of the foreclosure. Excerpts from transcript of deposition of Jennifer Nyhart, attached hereto as Exhibit 10, p. 31.

damages for emotional distress generally are not recoverable for breach of contract.  See Richter v. North America Van Lines, 110 F.Supp.2d 406, 413-14 (D.Md. 2000) ("The general rule is that emotional disturbance is not a damage recognized for breach of contract."); see also Scott v. Merck, 2011 U.S. Dist. LEXIS 158008 at *2-3 (D.Md. Jan. 7, 2011) ("The parties agree that emotional distress damages are not recoverable in an action for breach of contract.").

The same is true for damages for alleged loss of consortium.  Rozinsky v. Assurance Company of America, 2016 WL 927147 at *2-3 (D.Md. March 4, 2016) (dismissing claim for loss of consortium based on breach of contract).  Therefore, PNC is entitled to summary judgment on Plaintiffs' claim in Count II for damages for alleged emotional distress and loss of consortium.  Richter, supra, 110 F.Supp.2d at 413-14; Rozinsky, supra, 2016 WL 927147 at *2-3.

### C.    Plaintiffs' Claims Under The Maryland Consumer Protection Act Fail As A Matter Of Law.

Count III of Plaintiffs' Complaint purports to assert claims under the Maryland Consumer Protection Act ("MCPA"), Md. Code, Commercial Law Art., § 13-303 and § 13-316.  (Doc. 2, ¶¶ 46-53)  Section 13-303 prohibits deceptive trade practices and § 13-316 requires mortgage servicers to comply with certain requirements.  Plaintiffs' claims under both sections fail as a matter of law.

1.      **Plaintiffs' Claim For Deceptive Trade Practices Fails As A Matter Of Law.**

In order to succeed on claim for deceptive trade practices under the MCPA, a plaintiff must prove that the defendant made a "false or misleading oral or written statement . . . or other representation" to or failed to disclose a material fact.  Castle v. Capital One, 2014 U.S. Dist. LEXIS 4923 at *21-22 (D.Md. Jan. 15, 2014).  In addition, plaintiffs must prove that they *relied* upon a false or misleading statement or omission by the defendant and suffered damages as a result of that reliance. Castle, supra, 2014 U.S. Dist. LEXIS 4923 at *21-24; Kaswell v. Wells Fargo, 2014 U.S. Dist. LEXIS 107879 at *16-20 (D.Md. Aug. 6, 2014); Stewart v. Bierman, 859 F.Supp.2d 754, 768-790 (D.Md. 2012), citing Lloyd v. Gen. Motors Corp., 916 A.2d 257 397 Md. 108 (2007); Citaramanis v. Hallowell, 613 A.2d 964, 969, 328 Md. 142, 151 (1994).

In the instant case, Plaintiffs have failed to produce evidence of any false or misleading statement by PNC or any facts showing reliance.  In their Complaint, Plaintiffs' allege in conclusory fashion that PNC engaged in deceptive trade practices by "wrongfully rejecting Plaintiffs' monthly mortgage payments, wrongfully declaring Plaintiffs in default under the Note, wrongfully reporting negatively to the credit bureaus, and wrongfully instituting said foreclosure against

the Property."   Complaint, ¶ 50.   These allegations do not amount to false or misleading statements.

Moreover, as shown above, the undisputed facts show that Plaintiffs' allegations are simply not true.  It is undisputed that, in January, 2014, the Loan was past due in the amount of $3,521.56.  Exhibit 3, ¶ 21; Exhibit 7.  PNC then offered Mr. Nyhart the Repayment Plan, but he failed to make the required payments.  Exhibit 1, pp. 109-110; Exhibit 3, ¶¶ 21-30; Exhibit 5, p. PNC 1497. Accordingly, PNC was within its rights to declare the Loan in default, reject Mr. Nyhart's partial payments in May and June, 2014 and file a foreclosure action.  Id. Therefore, Plaintiffs' claims that PNC's rejection of the partial payments and commencement of a foreclosure action constituted deceptive trade practices fails. Id.

When asked at his deposition if there was any other conduct of PNC that he claimed constituted a deceptive trade practice under the MCPA, Mr. Nyhart was unable to identify anything else beyond PNC's rejection of the partial payments in May and June, 2014.  Exhibit 1, pp. 119-21.  Because PNC's rejection of those partial payments was authorized by the plain terms of the Deed of Trust, Plaintiffs' claims for deceptive trade practices under § 13-303 fail as a matter of law.

**2.      Plaintiffs' Claim Under § 13-316 Fails As A Matter of Law.**

Plaintiffs also allege in Count III that PNC violated § 13-316 of the MCPA by not making "timely payments of the taxes and insurance and/or insurance premiums due under the [Deed of Trust] even though Plaintiffs, mortgagors, made monthly mortgage payments in amounts sufficient to pay the tax or insurance premium due."  (Doc. 2, ¶ 50)  The undisputed facts show that this plainly wrong.  As demonstrated above, Mr. Nyhart failed to make his mortgage payments pursuant to the Deed of Trust and Repayment plan.  Exhibit 1, pp. 109-110; Exhibit 3, ¶ 23-31; Exhibit 5, p. PNC 1497.  Furthermore, PNC's records show that PNC paid the taxes and insurance on the Property in a timely manner.  Exhibit 3, ¶ 37.  Finally, Mr. Nyhart admitted in his deposition that he did not even know when -- or if -- PNC failed to timely pay the taxes and insurance:

> Q:  When did PNC fail to make timely payments of taxes or insurance premiums?
>
> A:  Again, I would need to look into those exact dates and find out exactly when they occurred.
>
> Q:  So sitting here today, you don't know?
>
> A:  No, sir, I do not know.
>
> \*        \*        \*
>
> Q:  So sitting here today you don't know whether or not PNC has paid the insurance premiums?
>
> A:  I don't know.

Q:  Sorry?

A:  I do not know, and they haven't sent a letter or any type of correspondence that says they have or have not.

Exhibit 1, pp. 122-23.

The undisputed facts show that (1) Plaintiffs failed to make their required monthly mortgage payments; (2) PNC still paid the taxes and insurance on the Property; and (3) Mr. Nyhart is unaware of any facts showing otherwise.  Plaintiffs' claim under § 13-316 fails as a matter of law.

### 3. Plaintiffs' Claim For Damages For Inaccurate Credit Reporting Under The MCPA Is Preempted By The federal Fair Credit Reporting Act.

Further, even if Plaintiff did have a viable claim under the MCPA, they cannot recover damages for alleged inaccurate credit reporting.  A claim under the MCPA for inaccurate credit reporting is preempted by the FCRA, just like Plaintiffs' claim for breach of contract.  See Alston v. Wells Fargo, 2016 U.S. Dist. LEXIS 24147 at * 33-34 (D.Md. Feb. 26, 2016) (dismissing MCPA claim based on allegedly inaccurate credit reporting due to FCRA preemption).[6]

---

[6]   Plaintiffs' claim for inaccurate credit reporting under the MCPA also fails because Plaintiffs have no evidence that their credit has been damaged by PNC.  See Section II(B)(3), supra.

**4.     Plaintiffs' Claim For Loss of Consortium Damages Fails As A Matter Of Law.**

Finally, to the extent that Plaintiffs are claiming loss of consortium damages under Count III, that claim fails as a matter of law.  Loss of consortium damages are only recoverable where there is a viable underlying tort claim.  <u>Rozinsky</u>, <u>supra</u>, 2016 WL 927147 at *2-3.  Here, Plaintiffs only allege a statutory violation. Therefore, they cannot recover loss of consortium damages in Count III.  <u>Id</u>.

**D.     Plaintiffs' Claims Under The Maryland Consumer Debt Collection Act Fail As A Matter Of Law.**

Count IV of Plaintiffs' Complaint purports to assert a claim under the Maryland Consumer Debt Collection Act ("MCDCA"), Md. Code, Commercial Law Art., § 14-402.  (Doc. 2, ¶¶ 54-62)  Specifically, Plaintiffs allege that PNC violated the MCDCA by seeking to "enforce a right" to foreclose on Plaintiffs "with knowledge that said right did not exist."  (Doc. 2, ¶ 58)  In addition, Plaintiffs claim that PNC violated the MCDCA by reporting false information about their credit worthiness.  (Doc. 2, ¶ 57)

These claims fail for the same reasons as Plaintiffs' other claims.  As shown above, the undisputed facts show that the Loan was in default in May, 2014. Therefore, PNC was within its rights to declare the Loan in default, reject Mr. Nyhart's partial payments in May and June, 2014 and initiate a foreclosure. <u>Exhibit 3</u>, ¶¶ 23-31; <u>Exhibit 4</u>, § 1; <u>Exhibit 5</u>; p. PNC 1497.  Therefore, Plaintiffs'

claims that PNC did not have the right to reject the partial payments and commence a foreclosure fails.  Id.

In addition, a claim under the MCDCA for inaccurate credit reporting is preempted by the FCRA, just like Plaintiffs' claim under the MPCA.  Alston, supra, 2016 U.S. Dist. LEXIS 24147 at * 33-34 (dismissing MCDCA claim based on allegedly inaccurate credit reporting due to FCRA preemption).  Plaintiffs' claim for inaccurate credit reporting under the MCDCA also fails because Plaintiffs have no evidence that their credit has been damaged by PNC.  See Section II(B)(3), supra.  Plaintiffs' claim for loss of consortium under Count IV also fails because Plaintiffs have not alleged a viable tort claim.  Rozinsky, supra, 2016 WL 927147 at *2-3.

## CONCLUSION

For all of the foregoing reasons, PNC's Motion should be granted.

Respectfully submitted,

June 3, 2016

*/s/ Daniel J. Tobin*_____
Daniel J. Tobin (Fed. Bar No. 10338)
BALLARD SPAHR LLP
1909 K Street, NW, 12th Floor
Telephone:  (202) 661-2287
Facsimile:  (202) 661-2299

and

*/s/ Robert A. Scott*_____
Robert A. Scott (Fed. Bar No. 24613)
BALLARD SPAHR LLP
300 E. Lombard Street, 18th Floor
Baltimore, Maryland 21202
Telephone: 410-528-5600

*Counsel for Defendant PNC Bank, N.A.*