IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

|  | * |  |
|---|---|---|
| STEVEN NYHART and JENNIFER NYHART, | * | |
| | * | |
| Plaintiffs, | | |
| | * | |
| v. | | Civil Action No. PX 15-2241 |
| | * | |
| PNC BANK, N.A. | | |
| | * | |
| Defendant. | | |

\*\*\*\*\*\*

## MEMORANDUM OPINION

Pending in this breach of contract case is Defendant's motion for summary judgment (ECF No. 31). The issues are fully briefed and the Court now rules pursuant to Local Rule 105.6 because no hearing is necessary. For the reasons stated below, Defendant's motion is granted in part and denied in part.

## I.      BACKGROUND[1]

On January 26, 2005, Plaintiff Steven Nyhart ("Mr. Nyhart") executed a Promissory Note ("Note") in the amount of $245,000.00 to National City Mortgage, a division of National City Bank of Indiana. ECF No. 31-4. The Note was secured by a Deed of Trust executed on the same date by Jennifer and Steven Nyhart (collectively, "Plaintiffs") and was recorded in the Land Records of Montgomery County. ECF No. 31-6. Defendant PNC Bank, N.A. ("PNC") became the servicer of the Loan as a result of PNC's acquisition of National City Mortgage. ECF No. 31-1 at 3.

---

[1] Unless otherwise noted, the facts here are construed in the light most favorable to the Plaintiffs, the nonmoving party.

By January 2014, Mr. Nyhart was approximately two payments behind on his mortgage. As a result, on January 15, 2014, PNC and Mr. Nyhart entered into a Repayment Plan (the "Repayment Plan") which allowed Mr. Nyhart to repay the past due amount on his mortgage over a five-month period by paying a specified amount each month in addition to his regular monthly payment. ECF Nos. 31-9 & 31-4. Under the Repayment Plan, Mr. Nyhart was required to pay five installments of: (a) $2,340 on or before January 16, 2014; (b) three payments of $2,496.36 on or before February 15, 2014, March 15, 2014, and April 15, 2014; and (c) a final payment of $2,496.38 on or before May 15, 2014. ECF No. 31-9. Mr. Nyhart made the first three Repayment Plan payments but failed to pay the $2,496.36 payment due on April 15, 2014. ECF No. 31-1 at 5; ECF No. 31-7 at 9.

On May 16, 2014, Mr. Nyhart submitted a payment of $1,760. Because the Repayment Plan required Nyhart to pay $2,496.38 in May 2014, PNC returned the $1,760 payment as insufficient. On June 13, 2014, Mr. Nyhart made another payment of $1,773. Again, the payment was returned to Mr. Nyhart for the same reason. At the time, however, Nyhart had additional funds in his "suspense account" with PNC which could be put toward the required payments. ECF No. 33-3 at 3. Plaintiffs continued to make their monthly payments for the remainder of 2014, and PNC continued to reject them. Plaintiffs then hired counsel, Gerald Solomon ("Solomon"), to assist them. ECF No. 2 at 4. On January 12, 2015, Solomon sent a letter to PNC seeking clarification of the loan transaction history and informing PNC that Plaintiffs had sufficient funds in their suspense account to cover all of the monthly payments in full and should not have returned the May and June payments. *See* ECF No. 33-3.

On January 29, 2015, PNC instituted a foreclosure action against Plaintiffs in the Montgomery County Circuit Court. *See* Case No. 400118V (Montgomery Cnty. Cir. Ct. Jan. 29,

2015). PNC then reversed course, informing Plaintiffs that the May and June 2014 payments "were rejected in error," and thus the loan should not have been referred to foreclosure. ECF No. 33-3 at 3. PNC further stated that "[w]e have removed your client's loan from foreclosure on March 3, 2015, and waived all foreclosure fees and costs. We apologize for this error." *Id.* PNC then dismissed the foreclosure action.

On June 1, 2015, Plaintiffs filed a complaint in the Circuit Court for Montgomery County against PNC. The complaint alleges four causes of action: (1) declaratory judgment; (2) breach of contract; (3) deceptive trade practices in violation of the Maryland Consumer Protection Act; and (4) violations of the Maryland Consumer Debt Collection Act. ECF No. 2. At base, Plaintiffs allege that PNC wrongfully rejected Plaintiffs' May and June 2014 mortgage payments, wrongfully declared Plaintiffs' in default, and mistakenly reported the default and foreclosure to the credit bureaus. On July 30, 2015, PNC timely removed the case to this Court pursuant to 28 U.S.C. §§ 1332, 1441, and 1446. ECF No. 1.

On June 3, 2016, PNC filed the instant motion for summary judgment. Reversing course once again, PNC now claims that its Customer Service Department was incorrect in abandoning foreclosure proceedings because Plaintiff's payments were insufficient all along. ECF No. 35 at 6. Thus, PNC asserts that it is Plaintiff, not PNC, who breached the loan agreement and so the original foreclosure action was proper. To date, however, PNC has not reinstituted any further foreclosure proceedings.

## II.    STANDARD OF REVIEW

PNC has moved for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. A court may enter summary judgment only if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P.

56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Emmett v. Johnson*, 532 F.3d 291, 297

(4th Cir. 2008). However, summary judgment is inappropriate if any material fact at issue "may

reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242,

250 (1986); *JKC Holding Co. LLC v. Washington Sports Ventures, Inc.*, 264 F.3d 459, 465 (4th

Cir. 2001).

The moving party bears the burden of showing there is no genuine issue as to any

material fact. *See Charbonnages de France v. Smith*, 597 F.2d 406, 414 (4th Cir. 1979). The

moving party can meet this burden by demonstrating the absence of evidence to support the

nonmoving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). In response, the

nonmoving party must then demonstrate specific facts showing that a genuine issue remains for

trial. *Id.* at 324. "A party opposing a properly supported motion for summary judgment may not

rest upon the mere allegations or denials of [his] pleadings, but rather must set forth specific

facts showing that there is a genuine issue for trial." *Bouchat v. Balt. Ravens Football Club, Inc.*,

346 F.3d 514, 522 (4th Cir. 2003) (internal quotation marks and citation omitted) (alteration in

original). This burden is particularly strong where the nonmoving party also bears the burden of

proof at trial. *Hughes v. Bedsole*, 48 F.3d 1376, 1381 (4th Cir.1995) (quoting *Pachaly v. City of

Lynchburg*, 897 F.2d 723, 725 (4th Cir.1990)).

**III.    ANALYSIS**

**A.    Declaratory Judgment (Count I)**

Plaintiffs' first cause of action is for declaratory relief pursuant to §§3-401 through 3-415

of the Courts & Judicial Proceedings Article of the Maryland Code. ECF No. 2 at 6. Plaintiff

contends that "an actual controversy [exists] between Plaintiffs and Defendant as to whether

Defendant breached its contract (i.e., the Note and DOT) with Plaintiffs and whether Plaintiffs

are released of all obligations under the Note and DOT." *Id.* at 5.

Maryland's Declaratory Judgement Act provides:

> Any person interested under a deed, will, trust, land patent, written
> contract, or other writing constituting a contract, or whose rights,
> status, or other legal relations are affected by a statute, municipal
> ordinance, administrative rule or regulation, contract, or franchise,
> may have determined any question of construction or validity
> arising under the instrument, statute, ordinance, administrative rule
> or regulation, land patent, contract, or franchise and obtain a
> declaration of rights, status, or other legal relations under it.

Md. Code Ann., Cts. & Jud. Proc. § 3-406. The Court retains broad discretion in determining

whether to issue a declaratory judgment. *See Brohawn v. Transamerica Ins. Co.*, 276 Md. 396,

406 (1975). In so deciding, the court must consider whether declaratory relief would "serve a

useful purpose in clarifying and settling the legal relations in issue," and whether the judgment

would "terminate and afford relief from the uncertainty, insecurity, and controversy giving rise

to the proceeding." *Volvo Constr. Equip. N. Am., Inc. v. CLM Equip. Co.*, 386 F.3d 581, 594 (4th

Cir. 2004) (internal citation and quotation marks omitted); *accord Hamilton v. McAuliffe*, 277

Md. 336, 339 (1976).

A declaratory judgment serves no "useful purpose" when it seeks only to adjudicate an

already-existing breach of contract claim. *Metra Indus., Inc. v. Rivanna Water & Sewer Auth.*,

No. 3:12CV00049, 2014 WL 652253, at *2 (W.D. Va. Feb. 19, 2014) (listing cases in which

courts found declaratory judgment actions unnecessary when brought to resolve a parallel breach

of contract claim). When a party seeks nearly identical relief through both a breach of contract

and declaratory judgment, "the declaratory judgment serves little useful purpose." *Wenzel v.

Knight*, No. 3:14-CV-432, 2015 WL 3466863, at *3 (E.D. Va. June 1, 2015).  Because "Plaintiffs

seek a declaration that Defendant breached its contract," (ECF No. 2 at 5) which mirrors their

breach of contract claim, Defendant's motion for summary judgment on the issue of declaratory relief (Count I) is granted.

## B.       Breach of Contract (Count II)

In their second cause of action for breach of contract, Plaintiffs accuse PNC of breaching the terms of the Note and Deed of Trust by rejecting Plaintiffs' monthly payments for April and May 2014, declaring Plaintiffs in default, instituting the foreclosure action, and reporting the default and foreclosure to credit reporting agencies. ECF No. 2 at 5–6. As an initial matter, the Court agrees with PNC that Mrs. Nyhart lacks standing to bring a breach of contract claim. *See* ECF No. 31-1 at 12 n.2. While Mrs. Nyhart signed the Deed of Trust, she did not sign the Note, making her a mere co-signer to the Deed of Trust pursuant its terms. *See* ECF No. 31-6 at 11 (defining a co-signer as someone who co-signs the Deed of Trust but does not execute the Note). Co-signers to the Deed of Trust are "not personally obligated to pay the sums secured by [the Deed of Trust]." *Id.* Because Mrs. Nyhart is not an actual borrower on the loan, she cannot enforce the terms of the loan. Plaintiffs do not address this argument and therefore Mrs. Nyhart has abandoned her breach of contract claim. *See Tucker v. Specialized Loan Servicing, LLC*, No. PWG-14-813, 2016 WL 6476286, at *8 (D. Md. Nov. 1, 2016) (concluding that plaintiff "abandoned his breach of contract claim" by failing to address argument that he was not a party to the alleged agreement); *Mentch v. E. Sav. Bank, FSB*, 949 F. Supp. 1236, 1247 (D. Md. 1997). Thus, PNC's motion for summary judgment is granted with respect to Mrs. Nyhart's breach of contract claim.[2]

---

[2] PNC does not challenge Jennifer Nyhart's standing to bring the MCPA or MCDCA claims (Counts III and IV). Jennifer Nyhart is a co-obligor under the Deed of Trust and thus a "consumer" who can bring MCPA claims. *See* Md. Code Ann., Com. Law § 13-101. Jennifer Nyhart also may pursue MCDCA claims arising from PNC's alleged attempt to enforce a right knowing that such right did not exist. *See Rawlinson v. Law Offices of William M. Rudow, LLC*, 460 F. App'x 254, 258 (4th Cir. 2012).

With regard to Mr. Nyhart's breach of contract claim, in Maryland breach of contract requires proof that the defendant owed the plaintiff a contractual obligation and that the defendant breached that obligation. *Taylor v. NationsBank, N.A.*, 365 Md. 166, 175 (2001). Here, the parties' disagreement centers on whether PNC broke its agreement when it returned Mr. Nyhart's partial payments in 2014 and declared him in default. The Deed of Trust provides that:

> **Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the loan current**. Lender may accept any payment or partial payment if the payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted.

ECF No. 31-6 at 5 (emphasis added).

Accordingly, the Deed of Trust and Note requires full payment of the monthly amount so that the loan can remain current. ECF No. 31-4 at 2; ECF No. 31-6 at 4–5. If Mr. Nyhart fails to make the full amount of each monthly payment by the due date, the loan is in default according to the plain terms of this agreement. ECF No. 31-4 at 3.

It is undisputed that in January 2014, Mr. Nyhart was approximately two payments behind on his mortgage. *See* ECF No. 36-1 at 18. PNC and Mr. Nyhart therefore entered into a Repayment Plan, which afforded Mr. Nyhart the opportunity to become current within the following five months. ECF No. 31-9. Under the Repayment Plan, Mr. Nyhart was required to pay $2,340 on or before January 16, 2014, followed by three payments of $2,496.36 each on or before February 15, 2014, March 15, 2014, and April 15, 2014, and a final payment of $2,496.38

on or before May 25, 2014. ECF No. 31-9 at 3. The Repayment Plan was verbally accepted by

Mr. Nyhart and his acceptance was confirmed when he made his first Repayment Plan payment.[3]

      The Repayment plan made clear that if Mr. Nyhart made all the required payments, PNC

"will not refer or proceed to foreclosure sale during this repayment plan." ECF No. 31-9 at 4.

The Repayment plan further clarified that all other loan documents "remain in effect" during the

repayment period. *Id.*

      PNC argues that Mr. Nyhart failed to make all of the required payments, and points to a

loan transaction history in support. ECF No. 31-7 at 9. Although Mr. Nyhart does not challenge

the authenticity of the loan transaction history provided by PNC or the amount PNC claims Mr.

Nyhart paid toward his mortgage between January 2014 and June 2014, Mr. Nyhart rightfully

points to contrary evidence that Mr. Nyhart's payments, when combined with the funds in his

suspense account, were sufficient to bring the loan current. Indeed, Plaintiffs direct this Court to

PNC's own admission of the same.  ECF No. 33-1 at 3. As of March 3, 2015, PNC not only

"apologized for th[e] error" of returning Mr. Nyhart's payments and miscalculating the

application of the suspense funds, but also removed the loan from foreclosure and waived all

foreclosure fees and costs. *Id.*

      PNC's own words and deeds have created a genuine issue of disputed material fact as to

whether it honored or violated the terms of the loan agreement and modifications under the

Repayment Plan.  PNC agreed in the Repayment Plan not to institute foreclosure proceedings

and honor all other terms of the loan agreement if Mr. Nyhart made the revised payments. ECF

No. 31-9 at 4. PNC also admitted that Mr. Nyhart had made full payments under the Repayment

---

[3] The Repayment Plan states: "This agreement was approved with your [Mr. Nyhart's] verbal acceptance and indicates your intent to accept this offer. To confirm your acceptance of this plan, please make your first Repayment Plan payment of $2,340.00 by January 16, 2014." ECF No. 31-9 at 5. Mr. Nyhart paid $2,345 on January 10, 2014, confirming his acceptance of the plan. ECF No. 31-7 at 9.

Plan and that PNC had erroneously instituted foreclosure proceedings. PNC in fact engaged in a detailed financial analysis in support of this admission. ECF No. 33-3 at 7.  It also reversed foreclosure proceedings and covered all related fees and costs. *Id.* That PNC now believes it should have persisted in foreclosure based on delinquent payments is a question of fact that this Court at the summary judgment stage cannot decide. Rather, it is for the trier of fact to untangle at trial. Accordingly, Defendant's motion is denied as to Mr. Nyhart's breach of contract claim.

Mr. Nyhart's damages flowing from the breach of contract claim, however, are far more circumscribed than Mr. Nyhart avers. Generally, damages for emotional distress and loss of consortium are not available in breach of contract cases. *See Richter v. North American Van Lines*, 110 F. Supp. 2d 406, 413–14 (D. Md. 2000) ("The general rule is that emotional disturbance is not a damage recognized in breach of contract.") (citing Restatement Second of Contracts, § 353 (1981)); *Rozinsky v. Assurance Company of America*, RDB-15-02408, 2016 WL 927147, at *3 (D. Md. Mar. 4, 2016) (holding damages for loss of consortium can proceed only in an underlying action for personal injury). Mr. Nyhart has provided the Court no reason to deviate from this basic rule. Consequently, at trial Mr. Nyhart will not be permitted to present evidence of such damages on a breach of contract theory.

**C.      MCPA and MCDCA claims (Counts III and IV)**

Together, the Maryland Consumer Protection Act (MCPA) and the Maryland Consumer Debt Collection Act (MCDCA) prohibit the use of certain unfair or deceptive trade practices and set out standards for appropriate conduct in the practice of debt collection. The MCPA makes it unlawful to "engage in any unfair or deceptive trade practice" in "[t]he collection of consumer debts." Md. Code, Commercial Law § 13-303(5). An "unfair or deceptive trade practice" includes making a "[f]alse, falsely disparaging, or misleading oral or written statement . . . which

has the capacity, tendency, or effect of deceiving or misleading consumers" as well as violating

certain provisions of the MCDCA. Md. Code, Commercial Law §§ 13-301(1), (14)(iii). The

MCDCA provides that a debt collector may not "claim, attempt, or threaten to enforce a right

with knowledge that the right does not exist" or "disclose or threaten to disclose information

which affects the debtor's reputation for credit worthiness with knowledge that the information is

false." Md. Code, Commercial Law §§ 14-202(8), (3).

Plaintiffs claim that PNC violated the MCPA and MCDCA by wrongfully rejecting their

monthly mortgage payments, wrongfully declaring them in default under the Note, wrongfully

reporting of their delinquent account to credit reporting agencies, and wrongfully instituting a

foreclosure action against them. ECF No. 2 at 8.

To the extent Plaintiffs MCPA and MCDCA claims are based on PNC's credit reporting

they must be dismissed as preempted by the Fair Credit Reporting Act ("FCRA"). The FCRA is

"a comprehensive statutory scheme designed to regulate the consumer reporting industry." *Ross*

*v. FDIC*, 625 F.3d 808, 812 (4th Cir. 2010); *Alston v. Wells Fargo Home Mortg.*, No. CV TDC-

13-3147, 2016 WL 816733, at *10 (D. Md. Feb. 26, 2016). In keeping with that broad regulatory

purpose, Congress amended the FCRA in 1996 to add a preemption provision so as to avoid the

need to navigate conflicting credit reporting laws across various states. *Id.* at 813. That provision

mandates that "[n]o requirement or prohibition may be imposed under the laws of any State (1)

with respect to any subject matter regulated under . . . section 1681s-2 of this title, relating to the

responsibilities of persons who furnish information to consumer reporting agencies[.]" 15 U.S.C.

§ 1681t(b)(1)(F). Plaintiffs' MCPA and MCDCA claims are based, in part, on allegedly false

information that PNC provided to credit reporting agencies, which can be brought only through

the FCRA. *See Ross*, 625 F.3d at 812–13 (holding that claims relating to credit reporting brought

under the North Carolina Unfair Deceptive Trade Practices Act and the North Carolina Debt

Collection Act are preempted by the FCRA). PNC is therefore entitled to summary judgment on

Counts III and IV to the extent they rest on improper credit reporting.

In Count IV, Plaintiffs allege that "Defendant claimed and attempted to enforce a right to

foreclosure under the DOT with knowledge that said right did not exist or, alternatively, that said

right existed solely due to Defendant's wrongful rejection of Plaintiffs' monthly mortgage

payments," in violation of the MCDCA. ECF No. 2 at 9. The MCDCA provides that a debt

collector may not "claim, attempt, or threaten to enforce a right with knowledge that the right

does not exist." Md. Code Ann., Commercial Law § 14–202(8). Additionally, the "knowledge"

requirement of the MCDCA "has been held to mean that a party may not attempt to enforce a

right with actual knowledge or with reckless disregard as to the falsity of the existence of the

right." *Marchese v. JPMorgan Chase Bank, N.A.*, 917 F. Supp. 2d 452, 463 (D. Md. 2013)

(quoting *Kouabo v. Chevy Chase Bank, F.S.B.*, 336 F. Supp. 2d 471, 475 (D. Md. 2004)). The

MCDCA also states that a debt collector "is liable for any damages proximately caused by the

violation, including damages for emotional distress or mental anguish suffered with or without

accompanying physical injury." Md. Code Ann., Commercial Law § 14-203 (West).

Here, the parties vigorously dispute whether PNC properly rejected several of Plaintiffs'

monthly payments in 2014. As discussed above, Plaintiffs contend that these payments were

improperly rejected because there were sufficient funds in Plaintiffs' suspense account coupled

with Plaintiffs' monthly payments to bring the loan current. At one point, PNC agreed with this

contention and conceded that Plaintiffs' payments were returned in error. *See* ECF No. 33-3 at 3.

If these payments were improperly rejected, Plaintiffs would have been current on their

mortgage. PNC would therefore have had no right to institute a foreclosure action against them, which is the reason why PNC removed Plaintiffs' loan from foreclosure. *See id.*

Further, when considering the evidence in the light most favorable to Plaintiffs, PNC arguably had actual or constructive knowledge that it had no right to institute a foreclosure action. PNC was at all relevant times the payee of each of Mr. Nyhart's monthly payments and had access to Mr. Nyhart's loan transaction history, and thus was aware of the loan's standing. *See Kouabo v. Chevy Chase Bank, F.S.B.*, 336 F. Supp. 2d 471, 475 (D. Md. 2004) (defendant, as payee of monthly payments, had actual knowledge that plaintiff's payments were current). Moreover, PNC was likely paying closer attention to Mr. Nyhart's loan precisely because the parties had entered into an individualized Repayment Plan. Accordingly, the Court cannot conclude that Plaintiffs' MCDCA claim fails as a matter of law.

In Count III, Plaintiffs broadly allege that PNC's conduct also violates the MCPA without directing the Court to a particular type of deceptive trade practice identified in the Act. PNC argues that Plaintiffs' MCPA claim fails because they have failed to produce evidence of any "false . . . or misleading or written statement . . . or other representation of any kind which has the capacity, tendency, or effect of deceiving or misleading consumers." § 13–301(1); ECF No. 31-1 at 17. It argues that there is no evidence that it made any false or misleading statement and even if it did, Plaintiffs have not offered any evidence that they relied on that statement to their detriment. *See Bank of Am., N.A. v. Jill P. Mitchell Living Trust*, 822 F. Supp. 2d 505, 532 (D. Md. 2011) (stating that "[c]onsumers must prove that they relied on the misrepresentation in question to prevail on a damages action under the MCPA").

Although Plaintiffs' have not marshalled any evidence regarding reliance, this is not fatal to the claim. "False or misleading statements" is just one form of deceptive trade practice

prohibited by the MCPA. Section 13-301(14)(iii) also provides that violations of the MCDCA constitute a type of "unfair or deceptive trade practice." In this Circuit, "[a] violation of the MCDCA is a per se violation of the MCPA." *Olson v. Midland Funding, LLC*, 578 F. App'x 248, 251 (4th Cir. 2014). *See also Allen v. Bank of Am., N.A.*, 933 F. Supp. 2d 716, 730 (D. Md. 2013); *Fontell v. Hassett*, 870 F. Supp. 2d 395, 411 (D. Md. 2012); *Hastings v. Ocwen Loan Servicing, LLC*, No. GLR-14-2244, 2015 WL 433712, at *3 n.2 (D. Md. Feb. 2, 2015). Accordingly, because Plaintiffs' MCDCA claim survives summary judgment, so must the MCPA claim to the extent it is satisfied by proof of an MCDCA violation.

Plaintiffs also claim that Count III may proceed because PNC violated § 13-316 of the MCPA by failing to "make timely payments of the taxes and/or insurance premiums due under the DOT even though Plaintiffs, mortgagers, made monthly mortgage payments in amounts sufficient to pay the tax or insurance premium due." ECF No. 2 at 8. Section 13-316(d) states:

> A servicer shall make timely payments of the taxes or insurance premiums due under the mortgage so long as the mortgagor has paid an amount sufficient to pay the tax or insurance premium due and, with regard to the taxes, so long as the servicer is in possession of either the tax bill or notice from the taxing authority.

But Plaintiffs have generated no evidence to support this claim. PNC, by contrast, has demonstrated that it timely paid property taxes and insurance on the property. ECF No. 31-5 at 7. And Mr. Nyhart admitted in his deposition that he was not sure whether PNC failed to make timely payments of taxes or insurance premiums. ECF No. 33-3 at 122–23. Accordingly, because no credible evidence exists that property taxes and insurance were not paid, no reasonable jury could find otherwise.  Plaintiffs' MCPA claim on this ground is also dismissed.

## IV.     CONCLUSION

For the foregoing reasons, Defendant PNC's motion for summary judgment is granted in part and denied in part. The Court grants PNC's motion with respect to Plaintiffs' Count I (Declaratory Judgment). Regarding Count II (Breach of Contract), PNC's motion is granted with respect to Mrs. Nyhart, but denied with respect to Mr. Nyhart. The Court also grants PNC's motion with respect to Count III (MCPA claim) and Count IV (MCDCA claim) to the extent that it seeks to recover for PNC's reporting of Plaintiffs' creditworthiness. PNC's motion is also granted with respect to Count III to the extent it seeks relief under § 13-316. Otherwise, PNC's motion is denied with respect to Counts III and IV. A separate order will follow.

<u>11/30/2016</u>                                                <u>             /S/             </u>
Date                                                          Paula Xinis
United States District Judge